## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Richard J. Blitz
_____

Write the full name of each plaintiff.

-against-

BLDG Management Co., Inc.
_____

Amy Wolf
_____

Paul Howard
_____

_____

Write the full name of each defendant. If you need more
space, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of
names. The names listed above must be identical to those
contained in Section II.

### 20-cv-5462
(Include case number if one has been
assigned)

## COMPLAINT

Do you want a jury trial?
☑ Yes   ☐ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

RECEIVED
SDNY PRO SE OFFICE
2020 JUL 15   AM 12: 06

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☑   **Federal Question**

☐   **Diversity of Citizenship**

### A.   If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

Fair Housing Act

## Americans with Disabilities Act

### B.   If you checked Diversity of Citizenship

#### 1.   Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
                          (Plaintiff's name)

_____

(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

Page 2

If the defendant is an individual:

The defendant, _____, is a citizen of the State of

      (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____.

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____.

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| Richard | J. | Blitz |
|---|---|---|
| First Name | Middle Initial | Last Name |

220 East 63rd Street, Apt. 5D

Street Address

| New York | New York | 10065 |
|---|---|---|
| County, City | State | Zip Code |

212-430-1512

| Telephone Number | Email Address (if available) |
|---|---|

## B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

| First Name | Last Name | |
|---|---|---|
| BLDG Management Co., Inc. | | |

Current Job Title (or other identifying information)

417 Fifth Avenue, 4th Floor

Current Work Address (or other address where defendant may be served)

| New York | New York | 10016-2204 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 2:

| Amy | Wolf | |
|---|---|---|
| First Name | Last Name | |

Assistant Managing Agent and Assistant Vice President, BLDG Management Co.

Current Job Title (or other identifying information)

417 Fifth Avenue, 4th Floor

Current Work Address (or other address where defendant may be served)

| New York | New York | 10016-2204 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 3:

| Paul | Howard | |
|---|---|---|
| First Name | Last Name | |

Property Manager and Officer, BLDG Management Co.

Current Job Title (or other identifying information)

417 Fifth Avenue, 4th Floor

Current Work Address (or other address where defendant may be served)

| New York | New York | 10016-2204 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 4: _____
First Name                    Last Name

_____
Current Job Title (or other identifying information)

_____
Current Work Address (or other address where defendant may be served)

_____
County, City                    State          Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence:   220 East 63rd Street, Apt. 5D, NY, NY 10065 and surroundings

Date(s) of occurrence:   February 2015 ongoing to present

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

See attached Statement of Facts.

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

See attached Statement of Injuries

## IV. RELIEF

State briefly what money damages or other relief you want the court to order.

See Attached Statement of Relief

## V.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| 7/9/20 | |
| --- | --- |
| Dated | Plaintiff's Signature |

| Richard | J. | Blitz |
| --- | --- | --- |
| First Name | Middle Initial | Last Name |

220 East 63rd Street, Apt. 5D
Street Address

| New York | New York | 10065 |
| --- | --- | --- |
| County, City | State | Zip Code |

212-430-1512
Telephone Number                                    Email Address (if available)

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☑ Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Statement of Facts[1]

1.      Richard J. Blitz ("Mr. Blitz"), age 66, is a disabled senior citizen living alone as a rent-stabilized tenant in the property at 220 East 63rd Street, Apt. 5D, New York, NY 10065 ("the Apartment").

2.      Mr. Blitz has lived at the Apartment alone for over ten years and is the first successor to the rent stabilized lease, by virtue of having acted as a live-in caretaker to his parents for many years prior to their demise.  Therefore, Mr. Blitz pays a comparatively low monthly rent of $1,400 as opposed to the monthly market rent of $3,500 to $4,000.

3.      In the more than ten years Mr. Blitz has been a tenant at the Apartment, Mr. Blitz has never been late on, nor missed, any rent payments.

4.      BLDG Management Co., Inc. ("BLDG Management"), with offices at 417 Fifth Avenue, 4th Floor, New York, NY 10016-2204, is the owner, operator, and manager of the property at 220 East 63rd Street, New York, NY 10065, which includes the Apartment. Amy Wolf ("Ms. Wolf") is the Assistant Managing Agent for and Assistant Vice President of BLDG Management and serves as a managing agent for the property at 220 East 63rd Street, New York, NY 10065. Paul Howard ("Mr. Howard") is the Property Manager and Officer for BLDG Management and also serves as an agent for the property at 220 East 63rd Street, New York, NY 10065.

5.      The dwelling adjacent to the Apartment is Apt. 5C, also located at 220 East 63rd Street, New York, NY 10065 ("Apt. 5C").  The occupant of Apt. 5C is Wendi Newman ("Ms. Newman"). Ms. Newman has occupied Apt. 5C for approximately 25 years. Apt. 5C is also owned, operated, and managed by BLDG Management.

---

[1] This document was prepared with the assistance of New York Legal Assistance Group's Legal Clinic for Pro Se Litigants in the SDNY

6.     From February of 2015 through today, Ms. Newman has kept a Wheaten Terrier dog, identified as Mokie, in Apt. 5C. While Ms. Newman's prior pets had been well behaved and reasonably quiet, her current dog exhibits extremely loud and incessant barking behaviors.

7.     Specifically, Mokie, the dog in Apt. 5C typically barks at an approximate decibel level between 90-100, or the approximate sound level of a chainsaw in use. The frequency of the dog barking is approximately hourly. The duration of the dog barking episodes span from a few seconds to over three hours per episode. While the dog barking has literally occurred at all hours of the day and night over the years that Mokie has resided in Apt. 5C, the recent trend is that the dog typically barks from 5:00 A.M. until 11:00 P.M. Mokie also barks sporadically throughout the night.

8.     The loud, continuous barking of Mokie, the dog belonging to Ms. Newman in Apt. 5C, caused or exacerbated Mr. Blitz's disability and caused him physical harm, mental anguish and suffering. Mr. Blitz repeatedly asked Defendants BLDG Management, Ms. Wolf, and Mr. Howard for assistance in rectifying the situation or accommodating Mr. Blitz' needs as a disabled tenant. Defendants were undoubtedly aware that Mr. Blitz is disabled and suffers from Mokie's incessant barking based on the hundreds of complaints Mr. Blitz and others logged with BLDG Management employees, as well as letters sent to Defendants on Mr. Blitz' behalf by various parties. Nevertheless, BLDG Management, Ms. Wolf, and Mr. Howard did nothing to remediate the situation or accommodate Mr. Blitz' disability.

9.     Moreover, since the start of the NYS Stay-at-Home order on March 22, 2020, Mr. Blitz has been in the untenable position of being forced to live under unlivable circumstances; he is unable to stop the frequent barking of the dog in Apt. 5C and is also unable to leave his

apartment to escape the barking. Mr. Blitz, a disabled senior citizen, is literally trapped, and defendants have done nothing to accommodate him.

10.     Mr. Blitz is a disabled person within the meaning of the Fair Housing Act [42 U.S.C. 3601 §801 et seq.] and Americans with Disabilities Act [42 U.S.C. 126 §12101 et seq.]. Mr. Blitz suffers from a series of serious anxiety disorders. Mr. Blitz has been diagnosed with Post-Traumatic Stress Disorder, anxiety, and sleep deprivation, all of which are physical and/or mental impairments that substantially limit his major life activities. He collapsed and hit his head as a result of the barking, and consequently had to endure treatment for neurological damage. The diagnosing physicians and Mr. Blitz assert that noise from the barking of the dog in the adjacent apartment, Apt. 5C, is a primary cause or significant factor in Mr. Blitz's ailments.

11.     Mr. Blitz has been harmed by the barking of Ms. Newman's dog to the extent that he has developed disabilities and also worsened other existing disabilities because of the barking.

12.     Specifically, On November 2, 2015, Mr. Blitz first presented before his physician, Robert L. Savillo, MD, ("Dr. Savillo") with symptoms of anxiousness. This anxiousness was related to the barking of the dog in Apt. 5C. Subsequently, Mr. Blitz met with Dr. Savillo and his colleagues at least eight times in response to the dog barking problem.

13.     On September 6, 2016, Dr. Savillo prescribed Lorazapam because Mr. Blitz was troubled by neighbor's barking dog, was unable to sleep over weekend, and has noted increasing anxiety, chest tightness, tingling in face, both arms, and legs.  This severe anxiety diagnosis and similar reports by Dr. Savillo continue through 2020.

14.     At Dr Savillo's recommendation, on November 2, 2016, Mr. Blitz began psychiatric treatment with Joshua Dorsky, M.D. ("Dr. Dorsky"), who is Director of Mental

Health at Lennox Hill Hospital.  Mr. Blitz has been under the care of Dr. Dorsky and his staff on a regular basis from that time through today.

15.      In 2017, after a particularly severe encounter with the barking dog in Apt. 5C, Mr. Blitz collapsed as he was trying to leave the building.  The building doorman, Gary Glinski, called an ambulance and helped Mr. Blitz into the ambulance. Mr. Glinski later told Mr. Blitz that he had informed BLDG Management that Mr. Blitz was taken to New York Hospital emergency room because of the dog barking.

16.      Also in 2017, after a prolonged barking incident, the building superintendent, Sejdi Boja, came to the Apartment to verify Mr. Blitz's complaints. During Mr. Boja's visit, Mr. Blitz collapsed in his apartment from dizziness due to the dog's constant barking. As he collapsed, Mr. Blitz' head struck the sharp edge of the kitchen wall causing a concussion.  Mr. Blitz thereupon returned to New York hospital, where he was diagnosed with neurological damage and has had to endure related pain and vestibular therapy as a result to this day.

17.      On April 10, 2018, Dr. Dorsky diagnosed Mr. Blitz with Post Traumatic Stress Disorder based on the excessive stresses Mr. Blitz experienced based on the very loud dog barking.

18.      On June 25, 2018, Dr. Dorsky, who treated Mr. Blitz and diagnosed him with Anxiety Disorder and Post Traumatic Stress Disorder ("PTSD"), provided a letter to BLDG Management informing them of Mr. Blitz's PTSD condition and need for accommodation.

19.      Beyond Dr. Dorsky's June 2018 letter, Defendants had ample notice of Mr. Blitz's disability and his need for assistance concerning the barking dog.

20.      Mr. Blitz has had extensive conversations and written communications with defendants since 2016.  In these communications, Mr. Blitz expressed to the defendants the

4

nature of his disability, the impact the barking of the dog in Apt. 5C has had upon his condition, and repeatedly suggested ways in which the defendants can remedy the situation.

21.     On November 12, 2016, after the dog had been barking for 3 hours non-stop, Mr. Blitz sent certified letters to both Ms. Newman, the dog owner, and to BLDG Management.

22.     On November 14, 2016, and January 03, 2017, Mr. Blitz filed the first of many barking noise complaints with the City of New York.

23.     Mr. Blitz concurrently wrote many certified letters and faxes to Ms. Wolf of BLDG Management, who never responded in writing, but did ask Mr. Blitz via a phone conversation to call in all loud barking episodes to the doormen, to be memorialized on their building log.  Ms. Wolf also requested that Mr. Blitz ask any other aggrieved neighbors to contact her.  Mr. Blitz has complied with these requests to this day.

24.     Starting in 2015, Mr. Blitz began keeping a written log of dog bark incidents and filed literally hundreds of barking complaints with the doormen. Sometimes the doormen would come up to the floor to verify the barking, which could be easily heard all through the hallway.

25.     Subsequently Mr. Howard was hired as managing agent in January 2017.  Mr. Howard requested that Mr. Blitz continue to file noise complaints with the building doormen and with Mr. Howard.  Mr. Blitz sent Mr. Howard dozens of faxes, and continued to file hundreds more complaints by intercom with the doormen.  Mr. Howard never responded in writing to any of Mr. Blitz's communications.  Mr. Blitz continues the practice of calling the doormen when the dog barks loudly to this day.

26.     On May 05, 2017, New York Lawyers for the Public Interest wrote a letter on behalf of Mr. Blitz to Ms. Wolf and BLDG Management detailing the nature of Mr. Blitz's disability, how the dog barking was negatively impacting Mr. Blitz's disability, and requesting

that Mr. Blitz be given a reasonable accommodation pursuant to the Fair Housing Act and

Americans with Disabilities Act.  This letter was ignored and never responded to.  The NYLPI

letter was mailed to BLDG Management via Federal Express and email.

27.     Additionally, Mr. Blitz received renewal leases at the end of July, 2017 and again

in July, 2019.  Mr. Blitz signed and returned the renewal leases along with a mandatory

disclosure letter which required that Mr. Blitz describe any adverse conditions in the Apartment

that affected him. In these disclosure letters, Mr. Blitz detailed the daily incessant loud barking

of the dog in Apt. 5C and how this unacceptable barking aggravated Mr. Blitz's medical

condition. The renewal leases were countersigned by BLDG Management and returned to Mr.

Blitz without any response to his disclosure letters.

28.     Defendants knew of Mr. Blitz's disability and refused to make any reasonable

accommodation after repeated requests over several years.  Mr. Blitz brings this suit pursuant to

the Fair Housing Act and Americans with Disabilities Act because he is disabled and has been

denied reasonable accommodation – either quieting the barking dog, making Mr. Blitz's

apartment livable, removing the neighbor (or dog) in Apt. 5C, or relocating Mr. Blitz to another

apartment.

29.     Despite many empty promises and false encouragement, BLDG Management, Mr.

Howard and Ms. Wolf have done nothing to resolve Mr. Blitz's life-altering problem for the past

five years.  The excessive barking that defendants fail to address has constructively evicted Mr.

Blitz by denying him peaceful enjoyment of the property. Further, defendants themselves have

caused Mr. Blitz severe physical and emotional distress. Defendants disparaged Mr. Blitz's

legitimate complaints all the while imploring him to file hundreds of complaints and send them

dozens of faxes. Defendants were merely leading Mr. Blitz on with never any intention of seriously trying to resolve Mr. Blitz's situation.

RETALIATION CLAIM AGAINST DEFENDANTS

30.     Retaliation is separate and in addition to any original housing discrimination charge. Under federal law, it is unlawful to coerce, intimidate, threaten, or interfere with any person because he exercised a Fair Housing right. Any adverse action taken in response to requests made by disabled persons for reasonable accommodation or modification could be considered retaliation.

31.     Despite complying with all the requests from Ms. Wolf and Mr. Howard on behalf of BLDG Management, in February 2017, Mr. Blitz received a threatening and retaliatory "Notice to Cure" from BLDG Management. The Notice to Cure claimed that Mr. Blitz, through his complaints to Wendi Newman, the dog owner in 5C, was causing her distress. This notice, which is usually the precursor to an eviction notice, contained unverified charges supplied to the building by the attorney for Ms. Newman. Ms. Newman's attorney later admitted to Mr. Blitz that she had never had seen the dog, nor had ever heard the dog bark. As Mr. Blitz was threatened with possible eviction, Mr. Blitz was forced to seek legal help from the Lenox Hill Association.

32.     Rather than answer Mr. Blitz's letters and respond to his requests for an accommodation for his disability, BLDG Management sent the retaliatory "Notice to Cure", as well as other retaliatory and threatening letters in November 2018, April 2019, and most recently on October 18, 2019, in an effort to intimidate Mr. Blitz and interfere with his attempts to seek an accommodation under the FHA. Mr. Blitz responded timely to each of the threatening letters, denying the charges against him. BLDG Management never responded to any of Mr. Blitz's

letters. As further evidence of retaliation, BLDG Management arbitrarily raised Mr. Blitz' rent by $140.74 commencing in May 2020 through the present date, which Mr. Blitz has been forced to pay.

33.    Additionally, BLDG Management and their representatives interfered with Mr. Blitz's attempts to pursue his rights under the FHA by purposely and maliciously withholding evidence from him about other tenants' dog complaints, such as the complaints by Mr. Russell Schindler of Apt. 4C.  These complaints by at least seven other tenants would corroborate Mr. Blitz's complaints. BLDG Management filed an aborted eviction attempt against Ms. Newman, the dog owner, without Mr. Blitz's knowledge.  Paul Howard and Amy Wolf have also met secretly with other tenants who were complaining about the dog barking at BLDG Management's Fifth Avenue offices, so as to keep these meetings hidden from Mr. Blitz.

34.    Through their retaliatory and deceptive behavior, Defendant BLDG Management and their representatives sought to intimidate and threaten Mr. Blitz and to impede his efforts so as to avoid their obligation to accommodate Mr. Blitz's disability as required under the FHA. BLDG Management's retaliatory and deceptive behavior caused Mr. Blitz great emotional distress, worsened his physical condition, and increased his financial burden. BLDG Management and their representatives took active retaliatory steps over a number of years, beginning with the bogus "Notice to Cure" of February, 2017, to intimidate Mr. Blitz, threaten him, deny him of his rights, specifically, to avoid their obligation to accommodate Mr. Blitz's disability under the Fair Housing Act.

Statement of Injuries

1.      While, originally, Mr. Blitz would have been pleased to simply be moved to another apartment, he now expects to be paid for the injuries Mr. Blitz was forced to endure over the last five years as a result of mistreatment by defendants BLDG Management, et al., who deliberately ignored Mr. Blitz's plight, perhaps motivated by the huge economic benefits of forcing a rent-stabilized senior citizen to leave his apartment.

2.      For the past five years, Mr. Blitz been denied the opportunity to use and enjoy his residence.  He has been forced to leave his apartment daily during this period, to stay at a local senior center, and sleep at a hospital lounge. Mr. Blitz therefore seeks to recover the full rental value paid during this period.

3.      For the past five years, Mr. Blitz has endured myriad medical problems and been forced to undertake dozens of medical treatments and consultations, including four ER visits. Because BLDG Management did not correct the barking dog situation, Mr. Blitz has been required to take medication three times daily. Mr. Blitz seeks to recover for the injury to his health and the diminishment of his quality of life that this injury entails.

4.      Defendants BLDG Management, Amy Wolf, and Paul Howard have ignored all Mr. Blitz's requests for assistance and reasonable accommodation for five years.  He therefore seeks redress for the emotional distress and physical suffering endured while the defendants refused to accommodate his reasonable requests for intervention and assistance.

5.      Defendants retaliated against Mr. Blitz for lodging complaints and for making his requests.  Further, defendants threatened him, intimidated him with a false and unwarranted Notice to Cure and other threatening letters and illegally and arbitrarily raised Mr. Blitz's rent. Defendants attempted to impede Mr. Blitz's request for accommodation under the FHA through

9

their deceitful and secretive practices.  Mr. Blitz therefore seeks redress for the emotional distress, financial losses and any punitive amount he is due for having to endure the defendant's retaliation.

Statement of Relief

1.      Mr. Blitz is seeking injunctive relief, namely, the reasonable accommodation of being moved to a unit away from the barking dog or, alternatively, Ms. Newman and her dog being moved away from Mr. Blitz or, alternatively, installation by BLDG Management of sound proofing material that overcomes the barking of Ms. Newman's dog.

2.      Additionally, Mr. Blitz is seeking monetary damages in the amount of $90,000 for constructive eviction Mr. Blitz suffered since the arrival of the dog, Mokie in Apt. 5C in February of 2015.

3.      Additionally, Mr. Blitz is seeking monetary damages in the amount of $1.6 Million for the physical injuries and pain and suffering Mr. Blitz has endured for the four years subsequent to Mr. Blitz giving notice of his problem to BLDG Management and its agents.

4.      Additionally, Mr. Blitz is seeking monetary damages in the amount of $12,000 for the legal and other costs incurred, as well as any punitive damages related to retaliation that the court may deem to be warranted.

5.      Further, Mr. Blitz requests any and all additional damages the Court deems just and proper in considering all of the above.

RICHARD BLITZ
220 E. 63 ST. #5D
NEW YORK, N.Y. 10065

USM P3
SDNY

CERTIFIED MAIL

7019 1640 0000 9157 4066

Morgan PSDC NY 10001
THU 09 JUL 2020 PM 00 10

PRO SE INTAKE UNIT
DANIEL PATRICK MOYNIHAN COURTHOUSE
500 PEARL STREET
NEW YORK, N.Y. 10007



U.S. POSTAGE PAID
NEW YORK, NY
10028
JUL 09, 20
AMOUNT
$5.35
R2305H127855-11

1000

10007

RECEIVED
SDNY PRO SE OFFICE
2020 JUL 15  AM 12:05